UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE A. SILVA,

    Petitioner,

v.

TIM JOHNSON, Warden,[1]

    Respondent.

Case No. 18-cv-05660-YGR (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Jose A. Silva, a state prisoner currently incarcerated at Central Valley Modified Community Correctional Facility, brings the instant *pro se* habeas action under 28 U.S.C. § 2254 to challenge his 2014 conviction and sentence rendered in the Santa Clara County Superior Court involving sexual offenses against his former girlfriend's daughter, Victoria Doe.[2] Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the petition for the reasons set forth below.

## I.    FACTUAL BACKGROUND

The California Court of Appeal summarized the facts of Petitioner's offense as follows. This summary is presumed correct. *See Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

> ***The Prosecution's Evidence***
> In the fall of 2011, 13-year-old Victoria Doe lived in an apartment with her mother and defendant. Defendant and Victoria's mother were dating.
>
> On October 31, 2011, Victoria fell asleep in her Halloween costume. Victoria woke up and "somebody" was "touching" her. She testified that she had no clothes on, and the person had their fingers in her vagina. Victoria moved, and the person walked out of her bedroom. Victoria went to the bathroom and cried. When she left the bathroom, she saw defendant sleeping on the couch with the television on.

---

[1] Tim Johnson, the current warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] To protect the identity of the victim, the state appellate court referred to her respectively as "Victoria Doe." This Court will do the same in the instant Order.

Victoria thought this was unusual because defendant did not sleep with the television on.

Victoria testified that defendant subsequently touched her "multiple times." She explained that the incidents of touching "all blurred together because they are mostly the same." During the incidents, Victoria would wake up, and defendant would be there putting his fingers inside her vagina. On some occasions, defendant would also rub and grab Victoria's breasts. During one incident, defendant grabbed Victoria's hand and placed it on his penis. During another incident, defendant tried to put his penis inside Victoria's vagina. Victoria testified that she was "scared" and "just froze" on the occasions when defendant touched her. The last time defendant touched Victoria's vagina was on January 8, 2012.

Victoria testified that defendant put his fingers inside her vagina "at least 15 to 20" times. On cross-examination, when asked if there could have been less than 15 or 20 incidents of touching, Victoria testified: "It may have been less; it may have been more." On redirect examination, Victoria testified that the "absolute minimum" number of times defendant put his fingers in her vagina was "ten times."

Victoria told three friends that defendant was touching her. One of those friends encouraged Victoria to report the touching. On January 10, 2012, Victoria reported the touching to an official at her school. Police came to Victoria's school to interview her.

Victoria made two pretext phone calls to defendant on January 10, 2012. During the first call, Victoria said to defendant, "[Y]ou've been coming into my room and stuff, you know, and I think I might be pregnant." Defendant responded, "I've never done anything further than what I've done." Defendant also said, "I've never, you now, put anything inside of you." Victoria said that she was "not completely sure how you get pregnant," and defendant responded, "I've never, ever done anything other than touch you." Victoria asked defendant what he had touched, and defendant replied, "Like your breasts. Well I've never done anything else." When Victoria asked defendant why he was touching her breasts, defendant stated: "Because I get fuckin' drunk, I'm sorry. I'll, I promise I'll never fuckin' do it again. I fuckin' get so stupid. And you're actin' like you fuckin' never fuckin', you know, messed around with me, when I didn't fuckin' wanna fuck around." Victoria asked, "Does my mom know?" Defendant responded, "No."

Victoria's behavior changed after she reported the touching. She stopped going to school, and she started drinking alcohol and taking pills. Between June 2012 and February 2014, Victoria committed several felonies, including an auto theft, a residential burglary, and two second degree burglaries.

***The Defense Evidence***
Defendant testified on his own behalf. He denied molesting Victoria. He testified that he never touched Victoria's vagina, never touched her breasts inappropriately, and never forced her to touch his penis.

Defendant testified that Victoria called him names and hit him. When

2

> Victoria hit him, he would hit her back. He testified that he hit various parts of Victoria's body, including "her boob." When defendant used the word "touch" in the pretext call, he was referring to hitting Victoria. He explained that he believed Victoria's aunt was listening in on the call, he did not want to make the aunt angry, and he thought the word "touch" was a "less aggressive word" than the word "hit."
>
> Defendant denied touching Victoria on Halloween night. He explained that on Halloween night he was preparing for his young daughter's birthday party while Victoria was in her room. Defendant denied touching Victoria on January 8. He explained that on that date he was visiting his sister and did not return home until 10:30 or 11:00 p.m. Defendant's sister testified that defendant visited her on January 8, 2012.

*People v. Silva*, No. H041474, 2017 WL 1229745, *1-2 (Cal. Ct. App. Mar. 30, 2017).

## II. PROCEDURAL BACKGROUND

On October 4, 2012, the Santa Clara County District Attorney filed an information initially charging Petitioner with five counts of lewd or lascivious conduct on a child under the age of fourteen by force, violence, duress, menace, and fear, pursuant to California Penal Code § 288(b)(1). 1CT 155-159. An amended information filed on August 12, 2014 revised the charges against Petitioner to five counts of lewd or lascivious conduct on a child under the age of fourteen, pursuant to California Penal Code § 288(a). 1CT 252-256.

Following a jury trial, a Santa Clara County jury convicted Petitioner of all five counts on August 20, 2014. 2CT 403-407, 409-410. On September 19, 2014, the trial court sentenced Petitioner to sixteen years in prison. 2CT 474-479.

Petitioner filed a timely appeal and argued that the unanimity instruction, along with the trial court's failure to specifically instruct on "the principle of generic-testimony unanimity," violated his right to due process by reducing the prosecution's burden of proof. *Silva*, 2017 WL 1229745, at *2. On March 30, 2017, the California Court of Appeal rejected Petitioner's claims and affirmed the judgment of conviction. *Id.* at *2-4.

On June 14, 2017, the California Supreme Court denied review. Resp't Ex. 5. Petitioner did not seek collateral review in the state courts.

On September 17, 2018, Petitioner filed the instant habeas action in this Court. Dkt. 1.

Petitioner raises the same claims he raised on direct appeal. *Id.* at 5.[3]

On October 4, 2018, this Court issued an Order to Show Cause. Dkt. 6. On December 3, 2018, Respondent filed an Answer. Dkt. 11. On January 7, 2019, Petitioner filed a one-page document entitled, "Traverse In Support of Answer," in which he states that he "has no Traverse to contend with the Respondent's Answer, but truly wishes th[at] the Court does not dismiss the case and [he] is given a fair hearing." Dkt. 13. The matter is fully briefed and ripe for adjudication.

## III. LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, s*ee Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of section 2254(d)(1), if it correctly identifies the

---

[3] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, courts in this Circuit look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision. *See Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192 (2018); *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Even if constitutional error is established, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). In applying the above standards on habeas review, the Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Thus, a federal court will "look through" the unexplained orders of the state courts rejecting a petitioner's claims and analyze whether the last reasoned opinion of the state court unreasonably applied Supreme Court precedent. *See Ylst*, 501 U.S. at 804-06; *LaJoie*, 217 F.3d at 669 n.7. The last reasoned decision in this case is the state appellate court's unpublished disposition issued on March 30, 2017, which relates to Petitioner's claims in the petition. *Silva*, 2017 WL 1229745, at *2-4.

## IV. LEGAL CLAIMS

As mentioned, Petitioner claims that the trial court's improper unanimity instruction, along with its failure to specifically instruct on "the principle of generic-testimony unanimity," violated his right to due process by reducing the prosecution's burden of proof. Dkt. 1 at 5. The Court notes that Petitioner presented these issues as two separate claims in state court and in his current federal petition. As explained below, the state appellate court addressed them together because the two claims are closely intertwined.

### A. Background

The state appellate court gave the following background relating to Petitioner's claims, stating as follows:

> Pursuant to CALJIC No. 17.02, the trial court provided the following instruction to the jury:
>
> "17.02 SEVERAL COUNTS—JURY MUST FIND ON EACH
>
> Each Count charges a distinct crime. You must decide each Count separately. The defendant may be found guilty or not guilty of any or all of the crimes charged. Your finding as to each Count must be stated in a separate verdict."
>
> Pursuant to CALJIC No. 4.71.5, the trial court provided the following instruction to the jury:
>
> "4.71.5 WHEN PROOF MUST SHOW SPECIFIC ACTS OR ACTS WITHIN TIME ALLEGED
>
> "Defendant is accused in Counts 1 through 5 of

6

> having committed the crime of Lewd or Lascivious Acts with a child under 14, a violation of section 288(a) of the Penal Code, on or about and between October 31, 2011 and January 10, 2012.
>
> "In order to find the defendant guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a specific act or acts constituting that crime are within the period alleged.
>
> "And, in order to find the defendant guilty, you must unanimously agree upon the commission of the same specific act or acts constituting that crime are within the period alleged.
>
> "It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

*Silva*, 2017 WL 1229745, at *2.

## B. State Court Opinion

On the unanimity issue, the state appellate court stated that when faced with "reviewing a purportedly erroneous instruction," the question was "whether there was a reasonable likelihood the jury had applied the challenged instruction in a way that violated the Constitution," and the instruction "must be viewed in the context of the overall charge." *Silva*, 2017 WL 1229745, at *3.

On the generic-testimony issue, the state appellate court was guided by *People v. Jones*, 51 Cal. 3d 294, 321-22 (1990), where the California Supreme Court held:

> In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given. [Citation.] But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim.

*Silva*, 2017 WL 1229745, at *3-4. The state appellate court then found that the trial court erred by failing to give the jury a generic-testimony unanimity instruction, but concluded that such an error did not necessitate reversal. *Id.* at *4. The following is taken from the state appellate court's decision rejecting Petitioner's claims:

> ***Defendant Has Not Shown Reversible Error***
> Defendant contends that the version of CALJIC No. 4.71.5 provided to the jury "erroneously suggested that the jury could find [defendant]

7

guilty of all five charges if they reached unanimous agreement that he had committed only a single act constituting a violation of [Penal Code] section 288, subdivision (a)." This argument is not convincing.

There is not a reasonable likelihood that the jury applied CALJIC No. 4.71.5 in the manner espoused by defendant. Defendant's argument focuses on a single phrase in CALJIC No. 4.71.5—"act or acts." Defendant contends that the phrase "places 'act,' singular, and 'acts,' plural, on an equal footing" and thus "conveys the erroneous impression that it is sufficient for the jury to agree unanimously on only a single act in order to find the defendant guilty on all charges." Defendant improperly asks this court to view the phrase "act or acts" in isolation. We refuse to do so. (*See [People v.] Richardson*, [(2008)] 43 Cal. 4th [959,] 1028 [we will not view an instruction in artificial isolation].) CALJIC No. 17.02 specifically advised the jury: "Each Count charges a distinct crime. You must decide each Count separately." CALJIC No. 17.02 informed the jury that it needed to find a distinct, separate crime for each of the five counts. The combination of CALJIC No. 4.71.5 and CALJIC No. 17.02 adequately informed the jury that it needed to reach unanimous agreement on five separate crimes. When CALJIC No. 17.02 is read in conjunction with CALJIC No. 4.71.5, it is not reasonably likely that the jury interpreted CALJIC No. 4.71.5 in the manner propounded by defendant. *(See [People v.] Milosavljevic*, [(2010)] 183 Cal. App. 4th [640,] 649 [a reviewing court assumes that jurors "are intelligent persons capable of understanding and correlating all jury instructions given them"].)

Defendant correctly asserts that the trial court failed to instruct on generic-testimony unanimity, as required by *Jones*, *supra*, 51 Cal. 3d 294. *Jones* held: "[W]hen there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim." (*Id.* at p. 322.) The instructions here failed to advise the jury that it could convict defendant on all charges if it unanimously agreed that defendant committed all of the acts described by Victoria. The issue is whether the error necessitates reversal.

The erroneous failure to give a unanimity instruction is governed by the prejudice standard articulated in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). (*People v. Thompson* (1995) 36 Cal. App. 4th 843, 853 (*Thompson*).) Under the *Chapman* standard, reversal is required unless the reviewing court is satisfied "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman*, supra, 386 U.S. at p. 24.)

"Where the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless. [Citation.] Where the record indicates the jury resolved the basic credibility dispute against the defendant and

8

> therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless." (*Thompson*, *supra*, 36 Cal. App. 4th at p. 853.)
>
> Here, the failure to give a generic-testimony unanimity instruction does not necessitate reversal. This case required the jury to resolve a credibility dispute. Victoria and defendant provided completely different testimony. Victoria described a series of molestations that "blurred together" because they were "mostly the same." Although she did not provide many details of the molestations, Victoria testified that defendant put his fingers inside her vagina on a "minimum" of ten occasions. Defendant categorically denied molesting Victoria. During closing argument, defense counsel advised the jury that "this case is one of credibility" and "really does boil down to whether you can believe the accusations made by Victoria." The jury here resolved the credibility dispute in favor of Victoria and against defendant. On this record, we are convinced that the jury believed beyond a reasonable doubt that defendant committed all five charged acts of molestation. We must conclude that the failure to give a generic-testimony unanimity instruction was harmless error. (*See Thompson*, *supra*, 36 Cal. App. 4th at p. 853.)

*Id.* at *3-4 (brackets added).

### C. Applicable Law

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). The defined category of infractions that violate fundamental fairness is very narrow: "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Estelle*, 502 U.S. at 73.

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

9

crime with which he or she is charged. *In re Winship*, 397 U.S. 358, 364 (1970); *see, e.g., Solis v. Garcia*, 219 F.3d 922, 926-27 (9th Cir. 2000) (*Winship* rule not violated where jury was given instructions on liability under the natural and probable consequences doctrine that included all elements of second degree murder, even though jury was not given instructions on the target crime of second degree murder, which defendant allegedly committed as an aider and abettor). But instructions that lessen the prosecution's burden will be subject to harmless error review, rather than structural error review, "unless *all* the jury's findings are vitiated." *Byrd v. Lewis*, 566 F.3d 855, 866 (9th Cir. 2009) (emphasis in original) (citing *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (finding application of harmless error analysis of a defective jury instruction was proper because the instructional error was only with respect to one element and did not vitiate the jury's finding of guilt on the charged offense)).

In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). In order to show a due process violation, the petitioner must show both ambiguity and a "reasonable likelihood" that the jury applied the instruction in a way that violates the Constitution, such as relieving the state of its burden of proving every element beyond a reasonable doubt. *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (internal quotations and citations omitted).

A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. *See Calderon v. Coleman*, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), before granting relief in habeas proceedings, *see Calderon*, 525 U.S. at 146-47.

**D.     Analysis**

**1.     Unanimity Instruction (CALJIC No. 4.71.5)**

As to the unanimity instruction, Petitioner claims that CALJIC No. 4.71.5 impermissibly

"permits the jury to convict on all charges based on [a] unanimous agreement as to only one act." Dkt. 1 at 5. However, as explained above, the state appellate court reasonably rejected this claim when it determined that "[t]here was not a reasonable likelihood that the jury applied CALJIC No. 4.7.151 in the manner espoused by [Petitioner]." *Silva*, 2017 WL 1229745, at *3. The state appellate court noted that it could not judge CALJIC No. 4.71.5 in "artificial isolation" and must instead view the challenged instruction "in the context of the overall charge." *Id.* The state appellate court pointed out that Petitioner focused on a single phrase—"act or acts"—in CALJIC No. 4.71.5 to suggest that the phrase "places 'act,' singular, and 'acts,' plural, on an equal footing," and thus he argued that it "conveys the erroneous impression that it is sufficient for the jury to agree unanimously on only a single act in order to find [him] guilty on all charges the jury." *Id.* However, the state appellate court found that the combination of CALJIC No. 4.71.5 and CALJIC No. 17.02, which specifically required the jury to decide *each count separately*, "adequately informed the jury that it needed to reach unanimous agreement on five separate crimes." *Id.*

Habeas relief is not warranted on this issue. First, due process does not require that the jury agree as to the specific acts that constituted commission of the crimes charged. The Supreme Court has held that "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackman, J, concurring) (footnotes omitted); *see also Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (rule that jurors not required to agree upon single means of commission of crime, citing *McKoy*, applies equally to contention they must agree on one of the alternative means of satisfying mental state element of crime). Furthermore, the state appellate court's rejection of this claim was not unreasonable because CALJIC No. 4.71.5 cannot reasonably be read to support Petitioner's claim, especially in light of the instructions as a whole—including CALJIC No. 17.02, which directed the jury that it needed to find a distinct separate crime for each of the five counts. *Silva*, 2017 WL 1229745, at *3. This Court must presume the jurors followed their instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211

11

1  (1987). Finally, the Court points out that neither the prosecutor nor defense counsel suggested in
2  closing argument that the jurors could find Petitioner guilty of all five charges if they agreed he
3  had committed only one act. Therefore, the state appellate court's rejection of Petitioner's
4  challenge to CALJIC No. 4.71.5 was reasonable and is entitled to AEDPA deference.
5  Accordingly, this claim is DENIED.

### 2. Failure to Give General-Testimony Unanimity Instruction

Petitioner also claims the trial court denied him due process when it failed to instruct the jury on the principle of generic-testimony unanimity announced in *People v. Jones*. Dkt. 1 at 5.

Although criminal defendants in state court have no federal constitutional right to a unanimous jury verdict, *Apodaca v. Oregon*, 406 U.S. 404, 406 (1972), California requires that a criminal conviction be secured by a unanimous jury. Cal. Const. art. I, § 16. The California Supreme Court stated the jury should be given a unanimity instruction when, as here, "there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not [Petitioner] in fact committed all of them . . . ." *Jones*, 51 Cal. 3d at 321-22. Such a situation was present in the instant matter, but the state appellate court found any error in the trial court's failure to give a generic-testimony unanimity instruction was harmless error. *Silva*, 2017 WL 1229745, at *4.

A California trial court's failure to give a unanimity instruction when appropriate may therefore raise a ground cognizable in federal habeas corpus if it so infected the trial that a petitioner was thereby deprived of a fair trial guaranteed by the Fourteenth Amendment. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). However, this Court finds that the trial court's failure to provide a unanimity instruction cannot be said to have deprived Petitioner of a fair trial such that it was a constitutional violation of due process. To amount to a constitutional violation, the instruction error must have a "substantial and injurious effect or influence in determining the jury's verdict."[4] *See Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. U.S.*, 328 U.S.

---

[4] This Court finds unavailing Petitioner's argument that the error was of constitutional magnitude and that prejudice should be assessed under the standard of *Chapman v. California*, 386 U.S. 18, 24 (1967). The Supreme Court has clearly established that "unless all the jury's findings are vitiated [by an instructional error], harmless error review applies." *Byrd v. Lewis*, 566

12

750, 776 (1946)). Petitioner's argument is without merit. Here, when the case was presented to the jurors, they either could have found Victoria Doe credible and believed her testimony in its entirety, or they could have accepted Petitioner's categorical denial of any molestation. Defense counsel acknowledged that the case "really does boil down to whether you can believe the accusations made by Victoria." 7 RT 575. Thus, as the state appellate court noted, this case "required the jury to resolve a credibility dispute." *Silva*, 2017 WL 1229745, at \*4. It therefore seems that the jury was presented with an all-or-nothing situation in which they were required to determine whether the victim or Petitioner was lying. As discussed above, Victoria Doe testified about Petitioner's sexual misconduct and specific events over a three-month period. Moreover, the prosecutor emphasized that Petitioner was charged with five counts of child molestation and that the jurors must "all agree in the end, too, that there are at least *five acts* that occurred over a period of, in this case, three months." 7 RT 550, 553 (emphasis added). Finally, the evidence of Petitioner's guilt was compelling and included Petitioner's incriminating statements in the pretext phone call. In light of Petitioner's outright denial of all the allegations of sexual misconduct, coupled with the evidence presented at trial and the fact that the jury convicted Petitioner of all the counts charged, the Court cannot say that the trial court's failure to give a generic-testimony unanimity instruction had a substantial and injurious effect or influence on the jury's verdict. *See Brecht*, 507 U.S. at 637. Therefore, the Court finds reasonable the state appellate court's determination that the failure to give a generic-testimony unanimity instruction was harmless error. *See Davis v. Ayala*, __ U.S. __, 135 S. Ct. 2187, 2199 (2015) (Whether an error is harmless is determined by the *Brecht* standard.). Accordingly, Petitioner's claim that the trial court violated his rights to due process in this respect is also DENIED.

## V. CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case. For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's claims debatable or wrong. *See*

---

F.3d 855, 864 (9th Cir. 2009) (emphasis in original) (citing *Hedgpeth v. Pulido*, 555 U.S. 57 (2008), and *Neder v. United States*, 527 U.S. 1 (1999)). And the Supreme Court has made clear that the standard of prejudice on federal habeas review is the *Brecht* standard. *Fry v. Pliler*, 551 U.S. 112 (2007).

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

**VI. CONCLUSION**

For the reasons outlined above, the Court orders as follows:

1. All claims from the petition are DENIED, and a certificate of appealability will not issue. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2. The Clerk of the Court shall terminate any pending motions and close the file.

IT IS SO ORDERED.

Dated: September 25, 2019

_____
YVONNE GONZALEZ ROGERS
United States District Judge